[Cite as *Portis-Phillips v. Phillips*, 2016-Ohio-7803.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

| | | |
|---|---|---|
| KHALILAH PORTIS-PHILLIPS | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 2016-CA-34 |
| | : | |
| v. | : | T.C. NO. 14DR414 |
| | : | |
| JASON L. PHILLIPS | : | (Civil Appeal from Common Pleas |
| | : | Court, Domestic Relations) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the ____18th____ day of _____November_____, 2016.

. . . . . . . . . . .

VALERIE JUERGENS WILT, Atty. Reg. No. 0040413, 333 N. Limestone Street, Suite 202A, Springfield, Ohio 45503
    Attorney for Plaintiff-Appellant

SAMUEL J. PETROFF, Atty. Reg. No.0014983, One S. Limestone Street, Suite 1000, Springfield, Ohio 45502
    Attorney for Defendant-Appellee

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Khalilah Portis-Phillips appeals from a final judgment and decree of divorce entered by the Clark County Court of Common Pleas, Domestic Relations Division, which resolved numerous issues related to the end of her marriage to Jason Phillips and designated Mr. Phillips as the legal custodian and residential parent of the parties' child.

Ms. Portis-Phillips challenges several aspects of the trial court's judgment on appeal. For the following reasons, the judgment of the trial court will be reversed and remanded with respect to the effective date of the child support order; the judgment will be affirmed in all other respects.

## I. Facts and Procedural History

{¶ 2} The parties were married on February 5, 2012, and one child, a daughter, was born during their marriage. Ms. Portis-Phillips filed for divorce on May 22, 2014, at which time the child was two years old. Pursuant to agreed temporary orders filed in June 2014, the parties shared custody of the child and had similar amounts of time with her while the divorce was pending. Ms. Portis-Phillips requested that she be designated the custodial and residential parent, with visitation for Mr. Phillips. Mr. Phillips sought shared parenting.

{¶ 3} A hearing on the disputed issues was held on three separate dates between January and July, 2015. The magistrate entered its "judgment entry and decree of divorce" on July 16, 2015. Ms. Portis-Phillips filed objections. The trial court overruled the objections and adopted the magistrate's decision, with one minor modification, on November 4, 2015.[1]

{¶ 4} The following provisions of the divorce decree are at issue in this appeal: 1) the court's designation of Mr. Phillips as the custodial and residential parent; 2) the court's requirement that Ms. Portis-Phillips attend an anger management class; 3) the effective date of the child support order; 4) the court's determination that Mr. Phillips was entitled

---

[1] There were subsequent issues regarding the finality of this order for purposes of appeal, but these issues are not relevant here.

to the tax exemption for the child for 2014 "and every tax year thereafter"; and 5) the date used by the trial court for the end of the marriage.

## II. Evidence Presented at the Hearing

{¶ 5} The parties' separation and divorce were precipitated, to some extent, by an event that occurred on April 15, 2014. That morning, Mr. Phillips expressed frustration to Ms. Portis-Phillips that she had moved a stack of bills out of view, because he needed to pay them soon. Also, Ms. Portis-Phillips was apparently angry because a large portion of the parties' tax refund recently had been garnished to repay some of Mr. Phillips's student loans. Due to their conflict, Ms. Portis-Phillips left the house in the late morning and did not return until late afternoon.

{¶ 6} According to Mr. Phillips, he could smell alcoholic beverages on Ms. Portis-Phillips when she returned to the house with food in the late afternoon. She stayed only a short time, and left without speaking to Mr. Phillips. According to Ms. Portis-Phillips, Mr. Phillips was still "visibly upset" when she returned to the house, so she left and went to her brother-in-law's house (Mr. Phillips's brother, Willard). Willard's wife had been in the hospital and, according to Mr. Phillips, he (Mr. Phillips) had planned to visit Willard that day, but Ms. Portis-Phillips's absence with the couple's only car had made that impossible. The parties' child had been home with Mr. Phillips throughout the day, and Ms. Portis-Phillips had not responded to Mr. Phillips's texts or calls during much of this period.

{¶ 7} Around 8:00 p.m., Mr. Phillips learned that Ms. Portis-Phillips was at Willard's, and Willard reported to him that she was "pretty drunk." Mr. Phillips asked his sister, Tozyea, to pick Ms. Portis-Phillips up at Willard's and take her home or wherever

else she wanted, because Mr. Phillips was afraid she would drive while intoxicated. Tozyea testified that Ms. Portis-Phillips was "cussing," "yelling," and "belligerent" when she (Tozyea) arrived at Willard's house. Ms. Portis-Phillips refused Tozyea's offer of a ride and drove off in her own car, saying that she was going to pick up her child.

{¶ 8} Ms. Portis-Phillips arrived at the couple's home around midnight. She yelled at Mr. Phillips and claimed that she was leaving with their child, who was asleep upstairs. Mr. Phillips videoed Ms. Portis-Phillips's actions with his cell phone and followed her up the stairs, while trying to keep her from waking the child. According to Mr. Phillips, while he was a few steps below Ms. Portis-Phillips on the stairs, she turned around and struck him in the face; she also knocked his phone from his hand, causing it to break apart at the bottom of the steps and "corrupting" some of his video of the encounter up until that point. According to Ms. Portis-Phillips, she knocked Mr. Phillips's phone out of his hand but did not strike him. She also claimed that Mr. Phillips grabbed her rings off of her fingers. Mr. Phillips, who was a Springfield police officer himself, called the police. Ms. Portis-Phillips was arrested and taken to the police station.

{¶ 9} Police Officer Tyler Elliott, one of the officers who responded to the Phillipses' house on April 15, 2014, testified that Ms. Portis-Phillips smelled of alcoholic beverages and spoke loudly and slowly. Elliott further testified that Ms. Portis-Phillips did not make any claim that Mr. Phillips had struck or injured her at the house; rather, she initially denied that any altercation had occurred. After she had been transported to the jail, however, Ms. Portis-Phillips stated that Mr. Phillips had pushed on her throat and grabbed her neck at the house. At the jail, Elliott noticed that Ms. Portis-Phillips had what he believed to be "new injuries"; scratches and other marks had appeared on her

neck while he was doing paperwork. Elliott believed that these injuries had been self-inflicted while Ms. Portis-Phillips waited to be booked. Ms. Portis-Phillips was charged with and eventually acquitted of domestic violence.

{¶ 10} After the April 15 altercation, Mr. Phillips obtained a civil protection order (CPO) which prevented Ms. Portis-Phillips from coming to the house; he stated that he was following the advice he gave to other victims of domestic violence that they should get a CPO. (Ms. Portis-Phillips also obtained a CPO.) According to Mr. Phillips, he initially allowed Ms. Portis-Phillips and her parents (with whom she then lived) to have extended visits with their child, with the exchanges made through relatives; however, several times when he arrived to pick up the child, no one was at the home or the child was not there. Sgt. James Hall of the Springfield Police Department corroborated one account testified to by Mr. Phillips; on that occasion, Mr. Phillips had arrived at the grandparents' home at the time he had expected to pick up the child, and no one answered the door. Sgt. Hall was in the vicinity and came to the grandmother's house. After Sgt. Hall called Ms. Portis-Phillips at work, inquiring about the child's whereabouts, the grandmother did open the door. The grandmother testified that, on this occasion, she had been in the back of the house bathing the child and had not heard Mr. Phillips and Sgt. Hall knocking.

{¶ 11} Mr. Phillips stopped allowing the visits for several weeks out of fear that the child would not be returned to him, until temporary orders were put into effect by the court in June 2014. Once the temporary orders were in place, there were no further problems with visitation.

{¶ 12} Ms. Portis-Phillips testified that the child had behavioral issues – such as

seeing monsters, "wetting herself," and stuttering -- after the several-week period in May and June 2014 when the child did not see her mother. Ms. Portis-Phillips also testified that she did not think the parties could cooperate or communicate well enough to share parenting of the child. According to Ms. Portis-Phillips, she and Mr. Phillips communicated only through texts. Ms. Portis-Phillips opined that Mr. Phillips should not be the custodial parent for school because he "doesn't make good decisions"; she also expressed her view that the child would most likely be cared for by Mr. Phillips's mother at his home, rather than by Mr. Phillips. However, she acknowledged that Mr. Phillips was an appropriate caregiver, had been flexible about visitation, and had even purchased a flower for the child to give Ms. Portis-Phillips on Mother's Day.

{¶ 13} Ms. Portis-Phillips's mother and step-father testified at the hearing. They stated that both parents cared for the child, denied that Ms. Portis-Phillips ever drank to excess, and expressed concern that the parties were not able to cooperate enough to facilitate a week-on, week-off parenting schedule.

{¶ 14} Mr. Phillips's mother also testified that both parents cared for the child and that the parties communicated poorly except through texting. She stated that she has seen Ms. Portis-Phillips drinking, but not drunk, but that she would not necessarily know because Ms. Portis-Phillips drinks in her bedroom. The paternal grandmother stated that she is a "backup" babysitter when Mr. Phillips has custody of the child, but Mr. Phillips is the primary caregiver.

{¶ 15} Mr. Phillips testified that both parents were involved in the primary care for their child, but that he believed his home provided a more structured and stable environment. He noted, however, that there was "no lack of love [for the child] on either

side of the family." He described some of the activities in which he engaged with the child.

{¶ 16} Mr. Phillips stated that his biggest concern about Ms. Portis-Phillips was her anger. "It's not something [she] did on a daily or necessarily weekly basis, but it seems like when [Ms. Portis-Phillips] was angry or frustrated about something, she drinks and gets drunk," and "when she drinks, her anger turns into violence." Mr. Phillips testified that, in addition to the April 15 incident about which extensive testimony was offered, he and Ms. Portis-Phillips had had five or six other altercations in which she was drunk and aggressive toward him. He also testified that it "scares him" that Ms. Portis-Phillips lies to get what she wants or to get out of trouble. For example, Mr. Phillips stated that he did not put his hands on Ms. Portis-Phillips or take her rings during the April 15 incident. He cited this fear as the reason he only communicates with Ms. Portis-Phillips by text message.

{¶ 17} The guardian ad litem testified that she had spoken with someone at McKinley Hall, where Ms. Portis-Phillips had been evaluated, about Ms. Portis-Phillips's alcohol use[2]; that person did not think that Ms. Portis-Phillips had a problem with alcohol, but did feel "she was using it incorrectly as a coping mechanism." The guardian ad litem also noted the parties' poor communication and expressed concerns about weekly exchanges of the child and about shared parenting under these circumstances. The guardian ad litem recommended that Ms. Portis-Phillips be designated as the custodial parent, because she (the guardian ad litem) believed that the six weeks during which Mr.

---

[2] The circumstances under which Ms. Portis-Phillips was evaluated at McKinley Hall are unclear from the record.

Phillips kept the child away from Ms. Portis-Phillips before the temporary orders were in place had been "disruptive" to the child, considering that Ms. Portis-Phillips had been a primary caretaker for the child up to that point.

### III. Determination of Custodial and Residential Parent

{¶ 18} In her first assignment of error, Ms. Portis-Phillips contends that the trial court abused its discretion in awarding custody to Mr. Phillips.

{¶ 19} Pursuant to R.C. 3109.04(F)(1), the trial court must consider all relevant factors in determining the best interest of a child with respect to custody and visitation, including, but not limited to: the wishes of the child's parents; and wishes and concerns of the child, the child's interaction and interrelationship with his or her parents, siblings, and any other person who may significantly affect the child's best interest; the child's adjustment to home, school, and community; the mental and physical health of all persons involved in the situation; the parent more likely to honor and facilitate parenting time or visitation and companionship rights; whether either parent has failed to make all required child support payments; whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent has denied the other parent's right to parenting time in accordance with an order of the court; and whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 20} In its judgment entry, the trial court conducted a detailed and lengthy analysis of the statutory factors relevant to the best interest of a child and the allocation of parental rights and responsibilities. With respect to the custody of the child, the trial court found that both parents were bonded to the child and capable of being the primary

caregiver. Both parents lived in suitable homes, worked outside the home, and had appropriate child care arrangements for the child. The court found that neither parent had been exemplary with regard to facilitating visitation, with Mr. Phillips withholding the child from Ms. Portis-Phillips after the April 15 altercation and Ms. Portis-Phillips and her family "conceal[ing]" the child at times before the temporary court orders were in effect.

{¶ 21} The trial court found that there was no testimony from a "mental health professional" to substantiate any suggestion that Ms. Portis-Phillips was an alcoholic, but that the evidence, including an alcohol assessment, did indicate that Ms. Portis-Phillips has "a tendency to inappropriately use alcohol" when under stress. The court concluded that both parties showed impulsivity and immaturity and had engaged in behavior that the court "would characterize as controlling, verbally inappropriate and sometimes physically inappropriate." Regarding the April 15, 2014, argument, specifically, the court credited the testimony that Ms. Portis-Phillips had been intoxicated and had struck Mr. Phillips, but further found that Mr. Phillips had "not help[ed] the situation by videoing the argument with his cell phone."

{¶ 22} The court concluded that shared parenting was not a realistic option in the foreseeable future because of the parties' poor communication and cooperation. The court stated that the custody determination was "a relatively close case." The court further concluded, based on the statutory factors, the "relative strengths and weaknesses of each of the parents," and other evidence presented that it was in the child's best interest to designate Mr. Phillips as the legal custodial and residential parent. Ms. Portis-Phillips was given parenting time in accordance with the standard order of visitation.

{¶ 23} The trial court noted that several of the statutory factors, such as a history

of either party abusing or neglecting the child or an intention by either party to move out of state, were inapplicable to this case. The court also found that the child was not of an age to give meaningful input on the issue of allocation of parental rights.

{¶ 24} A trial court enjoys broad discretion when determining the appropriate allocation of parental rights and responsibilities. *Miller v. Miller,* 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988); *Montei v. Montei*, 2d Dist. Clark No. 2013 CA 24, 2013-Ohio-5343, ¶ 28. Absent an abuse of that discretion, a reviewing court will affirm the custody determination of the trial court. *Miller* at 74; *Montei* at ¶ 28. An abuse of discretion means that a trial court's decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 25} The evidence presented at the hearing supported the trial court's conclusions that both parties loved the child, were appropriate caregivers, and had supportive families. The evidence also supported the conclusion that the parties did not communicate effectively and that, for this reason, shared parenting was not feasible. As between the two parents, the evidence of Ms. Portis-Phillips's difficulty managing her anger, her resorting to alcohol in response to her anger, and her apparent willingness, while in an intoxicated state, to drive with the child in her car, provided reasonable bases for the trial court conclusion that the child's best interest would be served in Mr. Phillips's custody. We find no abuse of discretion.

{¶ 26} The first assignment of error is overruled.

### IV. Anger Management Class

{¶ 27} In her second assignment of error, Ms. Portis-Phillips contends that the trial court's order requiring her to attend an anger management class was against the

manifest weight of the evidence.

{¶ 28} The trial court's judgment required that Ms. Portis-Phillips "immediately enroll in and complete" an anger management class aimed at assisting people "in controlling their emotions, identifying and managing stressors in a more positive manner" and learning skills and techniques "designed to assist an individual in responding to negative situations in a non-violent manner, and in communicating more effectively."

{¶ 29} Evidence was presented at the hearing that Ms. Portis-Phillips became aggressive and even violent and made poor choices after she had consumed alcohol, and that she turned to alcohol when she was angry. For example, on April 15, 2014, Ms. Portis-Phillips remained angry over the course of many hours over a dispute with Mr. Phillips about her relocation of bills he was planning to pay and/or his default on student loan payments, which led to the garnishment of the couple's tax refund. She drank alcoholic beverages in the afternoon and evening and, by the time she returned home, was in a very agitated state. Ms. Portis-Phillips drove herself home while intoxicated, notwithstanding an offer by her sister-in-law to drive her, and expressed an intention to leave the home again by car with her daughter. This evidence, which was credited by the trial court, provided ample support for the trial court's requirement that Ms. Portis-Phillips attend an anger management class.

{¶ 30} The second assignment of error is overruled.

### V. Effective Date of Child Support

{¶ 31} Under the third assignment of error, Ms. Portis-Phillips contends that the trial court abused its discretion in determining the effective date of its child support order. Ms. Portis-Phillips does not dispute the appropriateness or amount of the child support

order.

**{¶ 32}** The date chosen for the effective date of child support is reviewed under an abuse of discretion standard. *In re P.J.H.,* 196 Ohio App.3d 122, 2011-Ohio-5970, 962 N.E.2d 389, ¶ 18 (2d Dist.). The effective date can be the date a motion is filed or "some other date that coincided with an event of significance in relation to the grounds for child support that was ordered." *Id.* at ¶ 20. As discussed above, an abuse of discretion means that a trial court's decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 33}** Pursuant to the magistrate's decision naming Mr. Phillips as the custodial parent, Ms. Portis-Phillips was ordered to pay $222.07 per month in child support, effective July 9, 2015, the date of the final hearing. The magistrate filed his decision on July 16, 2015. Ms. Portis-Phillips filed objections, which stayed the implementation of the magistrate's order. The trial court overruled Ms. Portis-Phillips's objections to the magistrate's decision on November 4, 2015, except that it found that the child support order should have been effective on July 16, 2015 (the date of the magistrate's decision), rather than July 9, 2016 (the date of the final hearing).

**{¶ 34}** On appeal, Ms. Portis-Phillips contends that the child support order established in the divorce decree should have been effective November 4, 2015, rather than July 9 or July 16, 2015. She argues that there was no rational basis for the trial court to implement the child support obligation at a point in time when the change in custody upon which the child support obligation was based had not yet been implemented. We agree.

**{¶ 35}** The magistrate found that $222.07 was an appropriate amount of child

support for Ms. Portis-Phillips to pay Mr. Phillips if he had custody of the child and she had the standard order of visitation. The trial court stated that the child support obligation ordered by the magistrate was "accurate, appropriate and in the minor child's best interest," without specifically addressing the *timing* of that obligation. The court also stated that "[t]he staying of the foregoing child support orders do not ultimately impact their effective start date if [the objections in question] are determined to have no merit."

{¶ 36} There may be situations in which a stay following the filing of objections related to child support would not necessarily delay the implementation of a new or adjusted support amount, such as when the support is increased or decreased based on a change in the income of a parent, rather than a change in the custody arrangement. However, where, as here, the change in child support is based on a change in the custodial arrangement, it is reasonable to presume that the timing of the changes should coincide, in the absence of some explanation for handling the matter differently. The trial court has identified no reason why they should not coincide here. Thus, the trial court abused its discretion in ordering Ms. Portis-Phillips to pay the increased child support beginning in July 2015, although the change in custody was not effective until November 4, 2015. We will remand this matter to the trial court for it to modify Ms. Portis-Phillips's child support obligation and make it effective on November 4, 2015.

{¶ 37} The third assignment of error is sustained.

### VI. Allocation of Tax Exemption

{¶ 38} In her fourth assignment of error, Ms. Portis-Phillips contends that Mr. Phillips should not have been awarded the tax exemption for the minor child. She claims that Mr. Phillips did not even ask for the exemption for 2014, and that he had agreed with

Ms. Portis-Phillips's claiming the child.

{¶ 39} The portions of the record cited by Ms. Portis-Phillips in support of this argument do not substantiate her assertions that the parties had agreed to file their taxes separately in 2014 and that she would get the exemption. Rather, the testimony she cites – her own testimony – was that she attempted to file "married filing separately" in 2014, but was unable to do so because she did not have Mr. Phillips's Social Security number. When her return was "rejected" by TurboTax, she filed an extension. Her testimony did not address who would get the exemption for the child in 2014 if they managed to file separately, or how they would handle the exemption in future years.

{¶ 40} The trial court stated that it considered the payment of child support (to the parties' child and Mr. Phillips's other minor child), the parties' relative financial circumstances, and their net assets and liabilities. The court found that "[l]ittle evidence was offered" as to the tax savings that might flow to either party as a result of the exemption or their relative tax brackets. Based on the limited information presented to the trial court about the effect of the tax exemption, we cannot find that the trial court abused its discretion in awarding the exemption to Mr. Phillips, the custodial parent.

{¶ 41} The fourth assignment of error is overruled.

## VII. Alternate Date for Termination of Marriage

{¶ 42} The trial court used April 15, 2014, the date of the parties' separation, as the date that the marriage terminated. It based this date on "the totality of the circumstances," finding that there had been no attempts at reconciliation, that the parties had maintained separate residences and separate incomes after that date, and that they "did not appear to have been sharing society, companionship, comfort, love, solace or

sexual relations" thereafter.

**{¶ 43}** R.C. 3105.171(A)(2) defines "during the marriage" as "whichever of the following is applicable":

(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce * * *;

(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property.  If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.

"A trial court's determination of the duration of the marriage is reversible only if it constitutes an abuse of discretion." (Citations omitted.) *Taylor v. Taylor*, 2d Dist. Miami No. 2012-CA-16, 2013-Ohio-2341, ¶ 48, citing *Bertram v. Bertram,* 2d Dist. Clark No. 2007-CA-135, 2009-Ohio-55, ¶ 58.

**{¶ 44}** The parties had very limited assets and liabilities and, for the most part, the distribution of their assets was unaffected by the length of their marriage.  The only exception seems to be Mr. Phillips's pension plan, in which Ms. Portis-Phillips's marital interest is calculated with reference to the length of the marriage.  No evidence was presented about the pension fund at the hearing, or about any other manner in which the length of marriage was significant to the distribution of assets.

**{¶ 45}** Although the trial court did not expressly find that it would be "inequitable"

to use the date of the divorce as the ending date of the marriage, such a finding can be inferred from the court's discussion of the extent to which the parties lived separate lives after their separation. We find no abuse of discretion in the court's use of this alternate date.

**{¶ 46}** The fifth assignment of error is overruled.

## VIII. Conclusion

**{¶ 47}** The judgment of the trial court will be reversed with respect to the date on which the revised child support went into effect; on remand, the trial court will correct its judgment entry to reflect that the child support order was effective on November 4, 2015, when the trial court overruled Ms. Portis-Phillips's objections to the magistrate's order. In all other respects, the judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Valerie Juergens Wilt
Samuel J. Petroff
Hon. Thomas J. Capper