[Cite as *Schwenn v. Schwenn*, 2018-Ohio-2755.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| KARL SCHWENN | : | |
| | : | |
| *Plaintiff-Appellant* | : | Appellate Case No. 2017-CA-48 |
| | : | |
| v. | : | Trial Court Case No. 2015-DR-302 |
| | : | |
| ROSA A. SCHWENN | : | (Appeal from Common Pleas Court- |
| | : | Domestic Relations Division) |
| *Defendant-Appellee* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of July, 2018.

. . . . . . . . . . .

CYNTHIA A. LENNON, Atty. Reg. No. 0019458, P.O. Box 68, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellant

ROSA A. SCHWENN, 1055 Rockdell Court, Beavercreek, Ohio 45430
    Defendant-Appellee, Pro Se

. . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Plaintiff-appellant Karl Schwenn appeals from a final judgment and decree of divorce rendered by the Greene County Court of Common Pleas, Domestic Relations Division. Mr. Schwenn contends that the trial court abused its discretion with regard to spousal support and parenting time. He also contends that the trial court erred in its division of a retirement account.

**{¶ 2}** We conclude that the trial court did not abuse its discretion with regard to either spousal support or parenting time. However, the trial court did err in dividing the subject retirement account, as it utilized an incorrect number in determining the value of the asset. Accordingly, the judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings in accord with this opinion.

## I. Facts and Procedural History

**{¶ 3}** The parties were married on July 22, 2007. They have two minor children as a result of the marriage.

**{¶ 4}** On December 6, 2015, Ms. Schwenn was arrested on two counts of domestic violence.[1] The parties separated at that time. Mr. Schwenn filed a complaint for divorce on December 15, 2015. Mr. Schwenn was awarded the exclusive use of the marital home as well as sole temporary custody of the children. Ms. Schwenn was granted one hour of supervised visitation per week at the Greene County Family Visitation Center ("Visitation Center"). A Guardian Ad Litem (GAL) was appointed to represent the children. Hearings were conducted on August 10, 2016, October 25, 2016 and January

---

[1] Ms. Schwenn ultimately entered a plea of guilty to negligent assault.

11, 2017. A final judgment and decree of divorce was issued on August 23, 2017.

{¶ 5} Of relevance to this appeal, the trial court designated Mr. Schwenn as the primary residential parent and Ms. Schwenn was awarded parenting time on a graduating basis. At the time of the hearings, she was exercising two hours per week on Wednesdays at the Visitation Center. The trial court ordered that in addition to the Wednesday visitation, Ms. Schwenn receive two hours of supervised visitation on Fridays. The order referred to this as "Tier 1" visitation. The trial court's order further provided that Ms. Schwenn would not progress from this level of visitation until such time as she successfully completed six weeks of the four-hour supervised visitation schedule and (1) attended TCN Behavioral Health Services for a prescribed parenting class as well as a Nonviolent Conflict Resolution Class; (2) signed documentation enabling TCN to release information to the court, Mr. Schwenn's attorney and the GAL; and (3) submitted written documentation verifying that she was continuing in counseling for her mental health issues. The trial court's order stated that once Ms. Schwenn completed all of the stated requirements, visitation would be modified.

{¶ 6} The next level of visitation, "Tier 2," provided for Ms. Schwenn to continue her Wednesday visitations at the Visitation Center. However, the Friday supervised visitations would terminate and Ms. Schwenn would instead receive two hours of unsupervised visitation on Fridays. The order further provided that after the completion of six successful weeks of Tier 2, Ms. Schwenn would progress to Tier 3 which would provide for overnight visitation on Friday nights with no mid-week visitation. After six weeks of Tier 3, Tier 4 would provide for overnight visitation every other weekend starting at 6:00 p.m. on Friday and ending at 6:00 p.m. on Sunday. Tier 4 would also provide for

two hours of unsupervised visitation every Wednesday. Finally, once Ms. Schwenn completed six weeks of Tier 4 visitation, the Court's Standard Order of Visitation would be implemented.

{¶ 7} The trial court also divided a Roth IRA between the parties. The court found that Mr. Schwenn's USAA Federal Savings Bank Roth IRA, which he owned prior to the marriage, had a balance of $3,999.96 as of May 9, 2008. The court concluded this balance is pre-marital. The trial court further found that the value of the account was $76,774.39 as of December 31, 2015. Thus, the court found that the marital portion of the fund was $72,774.43 ($76,774.39 - $3,999.96) which it ordered equally divided.

{¶ 8} Finally, the trial court awarded Ms. Schwenn spousal support of $8,669.64 per year beginning September 1, 2017 and ending March 31, 2019.

{¶ 9} Mr. Schwenn appeals.

## II. Parenting Time

{¶ 10} Mr. Schwenn's first assignment of error states:

THE TRIAL COURT ERRED WHEN IT GRANTED MOTHER PROGRESSIVE PARENTING TIME WHICH WOULD AUTOMATICALLY RESULT IN HER RECEIVING OVERNIGHT UNSUPERVISED PARENTING TIME.

{¶ 11} Mr. Schwenn contends that the trial court erred with regard to the parenting time awarded to Ms. Schwenn.

{¶ 12} R.C. 3109.051 governs parenting time of non-residential parents and provides, in pertinent part, that:

If a divorce * * * proceeding involves a child and if the court has not issued a shared parenting decree, the court * * *, in accordance with division (C) of this section, shall make a just and reasonable order or decree permitting each parent who is not the residential parent to have parenting time with the child at the time and under the conditions that the court directs, unless the court determines that it would not be in the best interest of the child to permit that parent to have parenting time with the child and includes in the journal its findings of fact and conclusions of law. Whenever possible, the order or decree permitting the parenting time shall ensure the opportunity for both parents to have frequent and continuing contact with the child, unless frequent and continuing contact by either parent with the child would not be in the best interest of the child.

R.C. 3109.051(A).

{¶ 13} In determining whether to grant parenting time to a non-residential parent, R.C. 3109.051(D) directs trial courts to consider the following factors, in part:

(1) The prior interaction and interrelationships of the child with the child's parents * * *;

(2) The geographical location of the residence of each parent and the distance between those residences * * *;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

* * *

(7) The health and safety of the child;

* * *

(9) The mental and physical health of all parties;

* * *

(11) In relation to parenting time, * * * whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(12) * * * [W]hether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;

* * *

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

* * *

(16) Any other factor in the best interest of the child.

{¶ 14} "The issue of parenting time is a matter entrusted to the discretion of the trial court. Thus, absent an abuse of that discretion, we will not reverse a trial court's decision on parenting time. The term 'abuse of discretion' implies that the trial court's decision is unreasonable, arbitrary or unconscionable." *Szeliga v. Szeliga*, 2d Dist. Greene No. 2011–CA–65, 2012–Ohio–1973, ¶ 12. Additionally, the trier of fact is in the best position to observe the witnesses, weigh evidence, and evaluate testimony. *Clark v. Clark*, 3d Dist. Union No. 14-06-56, 2007-Ohio-5771, ¶ 23. Therefore, "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court." *Id*

{¶ 15} At the time of the final hearing, the parties' children were ages five and almost four. Mr. Schwenn contends that Ms. Schwenn's history of violence toward him demonstrates that the children, who are young, will be in danger during any unsupervised visitation. He further claims the evidence demonstrates that, during the marriage, Ms. Schwenn abused the children. He also complains that the trial court's order does not require Ms. Schwenn to do anything more than attend classes, because the court did not set forth any requirement that she "do well in counseling or follow her counselor's recommendations." Finally, he notes that "her current counselor" recommended that she "go for psychological testing with a psychologist due to comments of paranoid ideation."[2]

---

[2] Mr. Schwenn has attached a document purported to be an update regarding Ms. Schwenn's progress at TCN. It indicates that she has completed the class on nonviolence. It also indicates that her therapist at TCN recommended psychological testing. However, this document is dated December 15, 2017, almost four months after the final judgment and decree was issued. Thus, it is not a part of the record below, and we cannot consider it as evidence.

{¶ 16} The record does support a finding that Ms. Schwenn displayed violent behavior with Mr. Schwenn. Mr. Schwenn submitted footage from cameras in his home which show Ms. Schwenn hitting him with her hands and a plastic hanger. There is also footage of her kicking him and wielding a hammer at him. The footage demonstrates that the children were present during some of these attacks.

{¶ 17} Both Mr. Schwenn and his mother testified that Ms. Schwenn was abusive to the children. Mr. Schwenn testified that Ms. Schwenn spanked the children on a daily basis, and his mother testified that she observed Ms. Schwenn aggressively brush the hair of one child until the child yelled. Additionally, the notes from the Visitation Center indicate that Ms. Schwenn smacked the hand of one child and that she swatted the bottom of one child at different points during visitation. However, neither incident was labeled by the Center staff as harmful or hard blows. And both incidents appear to have happened when Ms. Schwenn was correcting the behavior of the child.

{¶ 18} The trial court, as the trier of fact, was free to credit some, all or none of the testimony and the notes submitted by Mr. Schwenn. The record supports a finding that Ms. Schwenn's supervised visits with the children went well, and that she and the children were engaged and appeared well-bonded. The GAL indicated that both of the children love her and want to spend time with her, and that Ms. Schwenn acts appropriately during visitation. The GAL was concerned that Ms. Schwenn had assaulted Mr. Schwenn in front of the children. However, the GAL recommended that Ms. Schwenn attend counseling and anger management classes and begin progressing away from supervised supervision. The footage from the home cameras does not depict any violence toward the children.

{¶ 19} At the time of the final hearing, Ms. Schwenn had been engaged in counseling with Esther Battle, Ph.D., a psychologist whose practice is focused on abused children and the evaluation and treatment of parents of such children. Dr. Battle, who first met with Ms. Schwenn in February 2016, was the only expert to testify during the final hearing. Dr. Battle had met with Ms. Schwenn more than 20 times as of the date of the hearing, and she continued to meet with her on a weekly basis. Dr. Battle opined that Ms. Schwenn was progressing with learning to control her anger, and that Ms. Schwenn did not pose a threat, either physically or psychologically, to her children.

{¶ 20} The trial court found that it was in the best interest of the children to have "meaningful and continuing contact" with Ms. Schwenn. However, the trial court acknowledged that Ms. Schwenn had exhibited violent and aggressive behavior with Mr. Schwenn in the presence of the children. Thus, the trial court fashioned the tiered parenting time schedule in order to ensure that she received all necessary treatment, including on-going counseling.

{¶ 21} While we do not condone Ms. Schwenn's violent behavior toward Mr. Schwenn or the fact that she exhibited this behavior in the presence of the children, we cannot say that the trial court abused its discretion. It is clear from the record that Ms. Schwenn and her children are well-bonded, love each other, and want to spend time together. There is no evidence that the children are afraid of her, or that she has harmed them. While Ms. Schwenn does have some mental health issues, she has been proactive in seeking treatment. The trial court, as noted, does not order an immediate cessation of supervised visitation. Instead, the order requires Ms. Schwenn to complete at least 24 weeks of successful progression in the tiered parenting system established by

the court. If Mr. Schwenn has cause to believe that Ms. Schwenn is not in compliance, or if circumstances change, he may seek modification of the parenting time order.

**{¶ 22}** The first assignment of error is overruled.

### III. IRA Account

**{¶ 23}** The second assignment of error asserted by Mr. Schwenn states:

THE COURT ERRED IN ITS DIVISION OF THE IRA ACCOUNT.

**{¶ 24}** Mr. Schwenn contends that the trial court's division of the USAA Federal Savings Bank Roth IRA is not supported by the evidence. In support, he notes that the evidence established the value of the account to be $34,385.01 as of December 31, 2007, and that the value was $76,774.39 as of December 31, 2015. He argues that the trial court erred by finding that the pre-marital value of the account was $3,999.96. Thus, he contends that Ms. Schwenn's marital share must be reduced.

**{¶ 25}** The trial court has broad discretion to divide property in domestic relations cases, and its decision will not be disturbed on appeal absent unreasonable, arbitrary, or unconscionable conduct. *Majeski v. Majeski*, 2d Dist. Montgomery No. 24668, 2012–Ohio–731, ¶ 11, citing *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401, 696 N.E.2d 575 (1998). "If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion." *Middendorf* at 401.

**{¶ 26}** We note that it appears the trial court did misconstrue the documentary evidence presented by Mr. Schwenn. Plaintiff's Exhibit S indicates that, at the end of 2007, the fair market value of the account was $34,385.01. The amount of $3,999.96 utilized by the trial court was not the account value but rather the amount of contributions

made to the account during 2007.   Plaintiff's Exhibit T does demonstrate that the value of the account as of December 31, 2015 was $76,774.39.   Thus, the trial court erred in using the incorrect amount for the beginning balance when determining the marital portion of the account.   However, we also note that the parties were married in July 2007.   Thus, the December 31, 2007 account statement does not provide the most accurate picture of the amount that was pre-marital.   Further, it is not clear how much of the 2007 contributions made to the account were made after the date of the marriage.   Thus, we are unable to determine the correct amounts necessary for making a determination of marital versus premarital assets in the IRA, and we must remand the issue to the trial court.

{¶ 27} The second assignment of error is sustained.

## IV. Spousal Support

{¶ 28} The third assignment of error provides:

THE COURT ERRED IN NOT MAKING THE CHANGE IN CHILD SUPPORT RETROACTIVE TO THE DATE OF THE HEARING.

{¶ 29} While Mr. Schwenn's statement of his assignment of error is directed toward child support, his argument is actually directed to the award of spousal support.   In his argument, he contends that the trial court's final decision made a downward modification of spousal support and that such modification should have been retroactive to the date of the final hearing on January 11, 2017, rather than the September 1, 2017 date specified in the decree.   In support, he argues that the failure to make the modification retroactive was inequitable.

{¶ 30} "Civ.R. 75(N) governs the granting of temporary spousal and child support and permits a trial court to grant temporary support for the party's sustenance and expenses during the suit. A temporary order is merely an order to provide for the needs of the parties during the pendency of the divorce action. The trial court has discretion to order an amount different from the temporary order after final hearing, even without evidence of a change in circumstances. The trial court need not justify a difference between a temporary and a permanent child support award." (Citations omitted.) *Martin v. Martin*, 8th Dist. Cuyahoga Nos. 79219, 79388, 2001 WL 1685587, * 10 (Dec. 20, 2001). In reviewing matters concerning support, we apply an abuse of discretion standard. *Goddard-Ebersole v. Ebersole*, 2d Dist. Montgomery No. 23493, 2009-Ohio-6581, ¶ 5.

{¶ 31} We cannot say that the trial court abused its discretion with regard to spousal support. Mr. Schwenn moved to modify the temporary spousal support award less than a month after it was first put into effect, and the trial court granted the motion. No further motions to modify were filed, so a motion requesting modification was not pending at the time of the final decree. Even if we were to consider the support in the final decree as a modification, we note that the trial court may, but is not mandated to, make such modification retroactive. *Cummings v. Cummings*, 2d Dist. Montgomery No. 26594, 2015-Ohio-3686, ¶ 36 – 37. Further, Mr. Schwenn's argument that the trial court's order failing to make the decrease retroactive is inequitable is without merit given that even with the amount of the support ordered, his income is almost five times more than Ms. Schwenn's income.

{¶ 32} The third assignment of error is overruled.

## V. Conclusion

**{¶ 33}** The first and third assignments of error being overruled and the second assignment of error being sustained, the judgment of the trial court is affirmed in part, reversed solely as to the division of the Roth IRA account, and remanded for further proceedings.

. . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies mailed to:

Cynthia A. Lennon
Rosa A. Schwenn
Hon. Steven L. Hurley