[Cite as *Jensen v. Jensen*, 2019-Ohio-4703.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| ERIC JENSEN | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 2019-CA-29 |
| | : | |
| v. | : | Trial Court Case No. 2017-DR-1122 |
| | : | |
| ASHLEY JENSEN | : | (Appeal from Common Pleas Court – |
| | : | Domestic Relations Division) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of November, 2019.

. . . . . . . . . . .

GREGORY K. LIND, Atty. Reg. No. 0055227, 20 South Limestone Street, Suite 340, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellant

ERIC M. SOMMER, Atty. Reg. No. 0066363, 202 North Limestone Street, Suite 250, Springfield, Ohio 45503
    Attorney for Defendant-Appellee

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Eric Jensen appeals from a final decree of divorce issued by the Clark County Court of Common Pleas, Domestic Relations/Juvenile Division, which granted Ashley Jensen's counterclaim for divorce, named her the legal and custodial parent of the parties' two minor children, made provisions for parenting time and child support, and divided the parties' property. For the following reasons, the trial court's judgment will be affirmed in part and reversed in part, and the matter will be remanded for further proceedings.

### I. Background and Procedural History

{¶ 2} The parties married on June 9, 2012, and they have two minor children together: a son born in 2011 and a daughter born in 2013. On December 18, 2017, Mr. Jensen filed a complaint for divorce, alleging that his wife was guilty of gross neglect of duty and extreme cruelty and that the parties were incompatible. Mr. Jensen further alleged that the parties were the owners of a one-half interest in property located on Dayton-Springfield Road in Fairborn, as well as household appliances, furniture, automobiles, and personal property.

{¶ 3} Along with his complaint, Mr. Jensen filed an affidavit of custody, indicating that the children had resided with both parents until December 10, 2017. Since then, the children had resided with their mother. In a separate affidavit, Mr. Jensen stated that Mrs. Jensen had been arrested on December 10, 2017 for domestic violence and assault, which occurred in front of the children. Mr. Jensen claimed that his wife was alcoholic and abused drugs. Mr. Jensen sought temporary custody of the children, which he received in an ex parte order.

{¶ 4} On December 21, 2017, Mrs. Jensen moved for relief from the ex parte order and to be granted immediate temporary custody of the children. She supported her

motion with an affidavit, stating that Mr. Jensen has ongoing daily substance abuse issues with alcohol, that he becomes enraged when drinking, and that he was convicted of assaulting her in March 2017. Mrs. Jensen stated that Mr. Jensen filed a "spurious domestic violence charge" against her and used it to obtain temporary custody of the children. Mrs. Jensen suggested her grandmother as a suitable third-party placement pending a hearing. The grandmother filed an affidavit indicating her willingness to care for the children.

{¶ 5} On January 4, 2018, the trial court gave temporary custody of the children to Janet Jensen,[1] set visitation for the parties, and ordered the parties to complete hair follicle drug testing. (There is nothing further in the record regarding any testing.) The trial court scheduled a review hearing for January 8, 2018, a pretrial conference for March 31, 2018, and trial for April 12, 2018. The court appointed a guardian ad litem (GAL) and ordered him to "present" his report to the court and the parties by the date of the pretrial conference.

{¶ 6} On January 5, Mrs. Jensen moved for temporary custody of the children and exclusive use of the marital home. She also filed an answer to the complaint, admitting the three paragraphs concerning residency, the date of marriage, the children, and the parties' property. Mrs. Jensen denied the allegations regarding grounds for divorce, and she asked for dismissal of the complaint.

{¶ 7} The court conducted review hearings with the parties, their counsel, and the guardian ad litem on January 8 and January 29, 2018. The record does not reflect what

---

[1] Janet Jensen is not the grandmother who filed the affidavit, and the record does not explain how Janet Jensen is related to the parties.

happened at those hearings, but after each hearing, the court continued the temporary orders. On February 9, 2018, the trial court filed an "agreed temporary order," which named Mrs. Jensen the residential and legal custodian of the children for the pendency of the case, granted her exclusive use of the marital home, and addressed the filing of Mrs. Jensen's 2017 tax return; the agreed order did not address visitation by Mr. Jensen.

{¶ 8} In March 2018, the parties filed a motion for mediation, which the court granted. Mr. Jensen subsequently sought a continuance of the April trial date, indicating that his counsel would be out-of-state on vacation and unavailable. The court rescheduled the trial for May 4, 2018. It appears from the record that a pretrial conference was held on May 4, and the trial later was rescheduled for September 7, 2018.

{¶ 9} On July 11, 2018, Mrs. Jensen moved for a modification of her husband's visitation on the ground that "safety issues have arisen which indicate that unsupervised visitation is no longer appropriate." She indicated that Mr. Jensen had been driving without a license, was intoxicated during visitation with the children, and behaved irresponsibly during visitation. Mrs. Jensen asked that unsupervised visitation be suspended until Mr. Jensen "can show proof of compliance with a drug and alcohol treatment program." The motion stated that Mrs. Jensen's counsel had discussed these matters with the GAL, who "shares these concerns and concurs with this motion." The motion itself indicated that the motion would be heard on July 13, 2018.

{¶ 10} On July 13, 2018, the trial court ordered that Mr. Jensen "shall have parenting time * * * subject to the approval and supervision of Ashley Jensen until further order of the court." It further stated that Mr. Jensen could petition for additional parenting time "when he can provide proof of compliance with a substance abuse treatment

program."

{¶ 11} The court conducted another pretrial conference on August 23, 2018.

{¶ 12} On September 5, 2018, Mr. Jensen's counsel sought another continuance of the trial date. He indicated that he would be out of the country on vacation on that date.

{¶ 13} On February 4, 2019, Mr. Jensen's counsel moved for leave to withdraw as counsel on the ground that Mr. Jensen had failed to pay the remainder of his retainer. Counsel indicated that Mr. Jensen would be acting pro se thereafter. A few days later, the trial court granted the motion for leave to withdraw.

{¶ 14} The matter came before the court for a hearing on February 15, 2019. No transcript of that hearing is in the record. However, the same day, the court filed an order granting Mrs. Jensen leave to file a counterclaim in this action and continuing the final hearing (trial) until March 14, 2019.

{¶ 15} Mrs. Jensen subsequently filed a counterclaim, which alleged, among other things, that Mr. Jensen was guilty of gross neglect of duty and that the parties were incompatible and no longer desired to be married. Mrs. Jensen's counterclaim contained two sentences regarding the parties' property: one indicating that they owned specific real estate on Dayton-Springfield Road and another indicating that the parties "possess personal property and other tangible and intangible assets and debts." Mrs. Jensen sought a divorce from Mr. Jensen, an "equitable distribution of the parties' marital assets and debts, custody of the parties['] minor children," and any other orders as may be "fair and just." Mrs. Jensen did not attach any supporting documents or affidavits to her counterclaim.

**{¶ 16}** A final hearing was held on March 14, 2019. Mrs. Jensen appeared with counsel; Mr. Jensen was not present. Mrs. Jensen testified that both she and her husband were residents of Clark County for more than six months before the complaint was filed, that they were married on June 9, 2012, that they have two children of which Mr. Jensen is the father, that she was not then pregnant, and that she and her husband were incompatible. Mrs. Jensen's counsel further asked her if she had "had a chance to review the final Decree of Divorce which has been prepared" and if she "believe[d] that that [was] a fair disposition of the case." Mrs. Jensen responded affirmatively to both of those questions. Mrs. Jensen's stepfather also testified that he had observed Mr. and Mrs. Jensen and that they were incompatible.

**{¶ 17}** Immediately after the testimony, the trial court stated:

The Court does find from the evidence that it has proper jurisdiction of the parties and the subject matter in this case. The Court also finds from the evidence that the Defendant in this case is entitled to a divorce and the parties are therefore released from the obligations of their marriage except as set forth in the terms of this Divorce Decree. It is approved by the Court in its entirety and it's made a Final Order of the Court. This will need to be filed upstairs in the Clerk's office and that will then finalize this matter. Good luck to you, ma'am.

(Tr. at 7.)

**{¶ 18}** The final decree of divorce was filed the same day (March 14). In the decree, the court found that the parties were incompatible and no longer wished to be married to each other, and it granted the parties a divorce from one another. The court

ordered Mr. Jensen to pay an outstanding indebtedness to the GAL in the amount of $293. The court found that the parties jointly owned the property located on Dayton-Springfield Road in Fairborn and ordered Mr. Jensen to quitclaim his interest to Mrs. Jensen; Mrs. Jensen would assume the indebtedness on the property. The parties each retained any motor vehicle currently titled in their name and were to pay any indebtedness on those vehicles individually. The decree stated that "[a]ll personal property has previously been equitably divided pursuant to the mutual satisfaction of the parties." The parties were to retain their separate bank accounts and retirement plans.

{¶ 19} The decree named Mrs. Jensen as the residential parent and legal custodian of the children, with Mr. Jensen receiving parenting time "pursuant to the mutual agreement of the parties." Mr. Jensen was ordered to pay child support of $246.53 per month per child if health insurance were provided by a party and, if not, $227.76 in monthly child support plus $50.96 cash medical support per child. The decree noted that Mr. Jensen was last employed by Piqua Concrete, but was not currently employed. The order stated that a "Notice to Withdraw shall issue to [Mr. Jensen's] employer when he becomes reemployed." Attached to the decree was a "Child Support Results Summary," which stated the annual income and adjusted annual income of the parties, and provided calculations for Mr. Jensen's child support obligation.

{¶ 20} Mr. Jensen appeals from the trial court's judgment, raising four assignments of error.

## II. Grounds for Divorce

{¶ 21} Mr. Jensen's first assignment of error states: "Whether the court errored [sic] as a matter of law in granting the parties a divorce without proper grounds as set

forth in R.C. 3105.01?" Mr. Jensen argues that Mrs. Jensen did not allege any grounds for divorce, she "failed to have testimony and reasons for her desire to terminate the marriage," and the parties did not agree at the hearing that they were incompatible.

{¶ 22} The grounds and procedures for obtaining a divorce in Ohio are purely statutory. *Freels v. Powers-Freels*, 2d Dist. Clark No. 2015-CA-9, 2015-Ohio-3915, ¶ 16. "Divorce is a creature of state statute, and the power of the General Assembly over the entire subject of marriage, as a civil status, and its dissolution, is unlimited except as restricted by the state and federal constitutions." *Barth v. Barth*, 113 Ohio St.3d 27, 2007-Ohio-973, 862 N.E.2d 496, ¶ 9, citing *Coleman v. Coleman*, 32 Ohio St.2d 155, 159, 291 N.E.2d 530 (1972). A common pleas court may grant a divorce for one of several causes, including "Incompatibility, unless denied by either party." R.C. 3105.01(K).

{¶ 23} With the permission of the trial court, Mrs. Jensen filed a counterclaim for divorce on February 19, 2019. She alleged that Mr. Jensen was guilty of "gross neglect of duty" and that the parties were incompatible.

{¶ 24} Mrs. Jensen and her stepfather both testified at the final hearing that she and her husband were incompatible. Mr. Jensen also had alleged in his complaint that the parties were incompatible, and he provided no evidence at the final hearing to dispute Mrs. Jensen's evidence regarding the incompatibility of the parties. Accordingly, the trial court did not err in granting Mrs. Jensen's counterclaim for divorce based on incompatibility.

{¶ 25} Mr. Jensen's first assignment of error is overruled.

### III. Allocation of Parental Rights

{¶ 26} Mr. Jensen's second assignment of error states: "Whether the trial court

errored [sic] in allocating parental rights and responsibilities without consideration of the best interest of the minor children?"   Mr. Jensen states that the "trial transcript lacks any information as to how the trial court Judge determined parental rights and responsibilities."

{¶ 27} Upon satisfactory proof of the causes of divorce, the trial court must "make an order for the disposition, care, and maintenance of the children of the marriage, as is in their best interests, and in accordance with [R.C. 3109.04.]"   R.C. 3105.21(A); *see also* R.C. 3109.04(A).   "The court has two choices in this regard – either ordering shared parenting or giving residential and legal custody to one parent."   *Sivertsen-Kuhn v. Kuhn*, 2d Dist. Greene No. 2019-CA-17, 2019-Ohio-3525, ¶ 9.   In this case, neither parent sought shared parenting.

{¶ 28} Pursuant to R.C. 3109.04(F)(1), the trial court must consider all relevant factors in determining the best interest of a child with respect to custody and visitation, including, but not limited to: the wishes of the child's parents; the wishes and concerns of the child, if appropriate; the child's interaction and interrelationship with his or her parents, siblings, and any other person who may significantly affect the child's best interest; the child's adjustment to home, school, and community; the mental and physical health of all persons involved in the situation; the parent more likely to honor and facilitate parenting time or visitation and companionship rights; whether either parent has failed to make all required child support payments; whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent has denied the other parent's right to parenting time in accordance with an order of the court; and whether either parent

has established a residence, or is planning to establish a residence, outside this state. *See also Portis-Phillips v. Phillips*, 2d Dist. Clark No. 2016-CA-34, 2016-Ohio-7803, ¶ 19.

{¶ 29} The trial court is not required to discuss the factors in R.C. 3109.04 individually when making its best-interest determination. *See Palichat v. Palichat*, 2019-Ohio-1379, __ N.E.3d __, ¶ 28 (2d Dist.). Rather, "[t]he critical issue is whether the record supports the trial court's conclusions and whether it explained its best-interest determination sufficiently. *Id.*, citing *Hutchinson v. Hutchinson*, 2d Dist. Montgomery No. 26221, 2014-Ohio-4604, ¶ 33-36 (finding that the record supported the trial court's explanation for its best-interest determination despite its failure to discuss each best-interest factor by name).

{¶ 30} In addition, R.C. 3109.051 governs parenting time of non-residential parents. *See Schwenn v. Schwenn*, 2d Dist. Greene No. 2017-CA-48, 2018-Ohio-2755, ¶ 12. In divorce proceedings involving a child where shared parenting is not ordered, the statute requires the trial court to make "a just and reasonable order or decree permitting each parent who is not the residential parent to have parenting time with the child at the time and under the conditions that the court directs * * *." R.C. 3109.051(A). R.C. 3109.051(D) directs the trial court to consider 16 statutory factors in determining whether to grant parenting time, in establishing a specific parenting time schedule, and in determining other parenting time matters.

{¶ 31} A trial court enjoys broad discretion when determining the appropriate allocation of parental rights and responsibilities. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988); *Montei v. Montei*, 2d Dist. Clark No. 2013 CA 24, 2013-Ohio-5343, ¶ 28. Absent an abuse of that discretion, a reviewing court will affirm the custody

determination of the trial court. *Miller* at 74; *Montei* at ¶ 28. An abuse of discretion means that a trial court's decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 32} We have often emphasized that "[m]ost abuses of discretion 'will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.' " *Kossoudji v. Stamps*, 2016-Ohio-7693, 65 N.E.3d 815, ¶ 22 (2d Dist.), quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). (Other citation omitted.) "A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Ents.* at 161.

{¶ 33} The entire transcript of the final hearing is seven pages long; Mrs. Jensen's testimony comprises 2 1/2 pages, and her stepfather's testimony consisted of four questions. The stepfather's testimony did not address the parties' two children; it was limited to his statements that he had observed Mr. and Mrs. Jensen and that they were incompatible. Mrs. Jensen's testimony about the children was limited to a few questions regarding the birth dates and parentage of the children. Mrs. Jensen provided no information about the children's development, their mental and physical health, and their relationships with family members, including their father. Nor did Mrs. Jensen provide any evidence at the final hearing about Mr. Jensen's visitation with the children and his interactions with her regarding the children. Mrs. Jensen's testimony that the proposed final decree of divorce was "a fair disposition of the case" was inadequate to establish that the terms of the divorce decree were in the best interest of the children.

{¶ 34} The record suggests that the GAL had significant contact with the Jensen

family and prepared a GAL report for the court. That report was not filed with the clerk, but the record suggests that it was prepared in August 2018 in anticipation of the September 2018 trial date, which was continued. There is no indication in the record that a subsequent report was prepared and provided to the court and the parties. The transcript of the March 14 hearing gives no indication that the GAL attended the final hearing, and the GAL report was not referenced by Mrs. Jensen, her counsel, or the court. The final decree of divorce also does not reference the GAL report, and there is nothing in the final decree of divorce to indicate that the allocation of parental rights and responsibilities was based on or consistent with the GAL report.

{¶ 35} At the conclusion of the final hearing, the trial court found "from the evidence" that it had jurisdiction and that the parties were entitled to a divorce. The trial court approved the proposed final decree of divorce in its entirety without comment. The court made no findings related to the best interest of the children, nor did it indicate that it had considered the children's best interest. The trial court did not mention the GAL report. Given the sparse record, we conclude that the trial court abused its discretion by allocating parental rights and responsibilities and visitation as it did.

{¶ 36} We include the trial court's calculation of child support in our reversal of the trial court's allocation of parental rights and responsibilities. Attached to the decree of divorce was "child support results summary," which provided calculations for Mr. Jensen's child support obligations. The source(s) for the amounts of annual income and adjusted annual income received by the parties is not apparent from the record; no financial disclosures were filed. In addition, we note that the calculations do not appear on the Ohio Child Support Guideline Worksheet, pursuant to R.C. 3119.021 and R.C. 3119.022.

{¶ 37} Mr. Jensen's second assignment of error is sustained.

## IV. Property Division

{¶ 38} Mr. Jensen's third assignment of error states: "Whether the property division was an abuse of discretion?"

{¶ 39} In his third assignment of error, Mr. Jensen claims that the trial court's division of property was inequitable, and that there was no factual basis in the record to support the trial court's judgment. Mr. Jensen further claims that neither the transcript of proceedings nor the final decree of divorce indicates that the court considered the factors enumerated in R.C. 3105.171.

{¶ 40} "When dividing married parties' assets and liabilities upon divorce, a court must first determine what is marital property and what is not." *Bergman v. Bergman*, 2d Dist. Montgomery No. 25378, 2013-Ohio-715, ¶ 27. The trial court must classify specific property as marital or separate, and where appropriate, must distribute separate property to the owner. *Id.*, citing R.C. 3105.171(B) and (D). The court's classification must be supported by competent, credible evidence. *Id.*, citing *Mays v. Mays*, 2d Dist. Miami No. 2000-CA-54, 2001 WL 1219345, *3 (Oct. 12, 2001); *Renz v. Renz*, 12th Dist. Clermont No. CA2010-05-034, 2011-Ohio-1634, ¶ 17.

{¶ 41} "A trial court has broad discretion when dividing marital property." *Williams v. Williams*, 2018-Ohio-611, 106 N.E.3d 317, ¶ 7 (2d Dist.), citing *Bisker v. Blake*, 69 Ohio St.3d 608, 609, 635 N.E.2d 308 (1994). In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court must consider all of the following factors:

(1) The duration of the marriage;

(2) The assets and liabilities of the spouses;

(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;

(4) The liquidity of the property to be distributed;

(5) The economic desirability of retaining intact an asset or an interest in an asset;

(6) The tax consequences of the property division upon the respective awards to be made to each spouse;

(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;

(10) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.171(F). "Since the court, pursuant to R.C. 3105.171(F)(2), must consider both the parties' assets and liabilities, 'an equitable division of marital property necessarily implicates an equitable division of marital debt.' " *Kraft v. Kraft*, 2d Dist. Montgomery No. 25982, 2014-Ohio-4852, ¶ 41, quoting *Buzard v. Buzard*, 2d Dist. Clark No. 2011 CA 18, 2012-Ohio-2658, ¶ 32.

{¶ 42} "A trial court must indicate the basis for its division of marital property in sufficient detail to enable a reviewing court to determine whether the award is fair, equitable, and in accordance with the law." *Janis v. Janis*, 2d Dist. Montgomery No. 23898, 2011-Ohio-3731, ¶ 43, citing *Young v. Young*, 2d Dist. Clark Nos. 08CA59 and 08CA61, 2009-Ohio-3504, ¶ 6, and R.C. 3105.171(G). "When reviewing the trial court's marital property division, the reviewing court is limited to determining whether, considering the totality of the circumstances, the trial court abused its discretion in fashioning the award." (Citation omitted.) *James v. James*, 101 Ohio App.3d 668, 680, 656 N.E.2d 399 (2d Dist.1995). Additionally, a trial court's failure to consider the factors set forth at R.C. 3105.171(F) to guide the division of marital property is an abuse of discretion. *Mays* at *6.

{¶ 43} Here, the record is devoid of any evidence to support the trial court's property division. The parties agreed in their respective complaint and counterclaim that they owned a home, automobiles, and personal property. However, the record contains no specific information about their assets, their liabilities, their sources of income (including employment), and their expenses. The divorce decree stated that Mr. Jensen had worked at Piqua Concrete and was unemployed at the time of the final hearing, and the attached "Child Support Results Summary" indicated that he had annual income of $24,960 and adjusted annual income of $24,460.80; there is no evidence in the record to support any of those statements or figures. Neither party filed an Affidavit of Income and Expenses (Uniform Domestic Relations Form – Affidavit 1) or an Affidavit of Property (Uniform Domestic Relations Form – Affidavit 2).

{¶ 44} As with the allocation of parental rights, Mrs. Jensen's testimony that the

proposed final decree of divorce was "a fair disposition of the case" was not a sufficient basis for the trial court's division of marital property. With the record before us, the trial court's division of property was an abuse of discretion.

{¶ 45} Mr. Jensen's third assignment of error is sustained.

### V. Due Process

{¶ 46} Mr. Jensen's fourth assignment of error states: "Whether the plaintiff was denied due process by not being afforded the right to attend the final divorce trial?"

{¶ 47} In his appellate brief, Mr. Jensen claims that his absence from the hearing was due to his incarceration in the Greene County Jail on a probation violation. He states that he filed a motion on March 12, 2019, in the Xenia Municipal Court, asking to be transported on a one-day furlough to the Clark County Court of Common Pleas for the final divorce hearing on March 14, 2019. Mr. Jensen states that his motion was denied, resulting in his failure to appear for the final divorce hearing. Mr. Jensen's brief indicates that a copy of his motion to the municipal court was attached as Exhibit 1; no exhibit was attached to his brief.

{¶ 48} Mr. Jensen recognizes that, as an incarcerated prisoner, he had "no absolute due process right" to attend the final hearing. *E.g., Jagodzinski v. Abdul-Khaliq*, 5th Dist. Licking No. 17-CA-22, 2018-Ohio-1898, ¶ 25, citing *Mancino v. Lakewood*, 36 Ohio App.3d 219, 221, 523 N.E.2d 332 (8th Dist.1987). However, he claims that the denial of his motion to attend the final divorce hearing was an abuse of discretion in this case.

{¶ 49} Based on the record before us, we cannot conclude that Mr. Jensen's due process rights were violated. There is nothing in this record to indicate that Mr. Jensen

was, in fact, incarcerated on March 14, 2019, when the final hearing was held. Mr. Jensen did not file a motion with the trial court (i.e., the domestic relations court), explaining that he was incarcerated at the Greene County Jail and had filed a motion for a furlough in the Xenia Municipal Court. Mr. Jensen did not seek a continuance of the final divorce hearing in the event that his motion in the municipal court were denied. The transcript of the March 14 final hearing merely indicated that Mr. Jensen was served with notice of the hearing and was not present; no one provided an explanation for his absence.

{¶ 50} Mr. Jensen's fourth assignment of error is overruled.

## VI. Conclusion

{¶ 51} The trial court's judgment will be affirmed in part, reversed in part, and remanded for further proceedings. Specifically, the trial court's judgment will be affirmed to the extent that it granted the parties a divorce from one another. In all other respects, the trial court's judgment will be reversed, and the matter will be remanded for further proceedings on custody of the children, parenting time rights of the non-residential parent, child support, property division, and any other relevant matters. Upon remand, the trial court also should ensure that all documents submitted to the court by the parties and/or the guardian ad litem are filed with the clerk of courts and made part of the record. If appropriate, those documents may be filed under seal.

. . . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.

Copies sent to:

Gregory K. Lind
Eric M. Sommer
Hon. Thomas J. Capper